By the Court,
Robertson, Ch. J.
A new trial was ordered in this case on the former occasion, when it was before the general term, principally on the ground that the plaintiffs were proved to be agents of the charterers and not of the defendant, the owner of the vessel in question. Evidence has been adduced in this case that they acted as brokers in bringing the owners and intended charterers together; and that in such cases, by custom in this city, the former are liable to the broker for a commission of two and one half per cent when the negotiation is closed. The plaintiffs would be fully entitled to recover such amount if they brought the parties together, and the negotiation was closed by an agreement. Winsor v. Dilloway, 4 Metc. 221. Main v. Engle, 1 E. D. Smith, 620. 1 Allen, 494.)
A written paper was produced on the present trial, signed by the defendant, dated .October 1, 1859, headed “memorandum of the conditions of charter of the steamship Massachusetts,” which had some interlineations, erasures and alterations, but which the plaintiffs claim to have been an agreement finally concluded between the parties. It contained minute details of the terms of the proposed charter, but had in it nothing to show who were the parties to the agreement. The defendant, who was examined as a witness on his own behalf, testified, among other things, that at the first interview between himself, Jewett, one of the plaintiffs, the supposed Mexican minister, (Lerdo,) and the supposed Mexican consul, (Saulnier,) on Saturday, the 1st of October, he signed such paper. • Saulnier first took it out of his pocket, partly written, *168 before they began to talk, saying he had it for some other vessel, and then wrote more on it. When they got the matter' talked over, he wrote it down. The witness added: “ After it was all done they requested me to sign it; they just read some few particulars, and he (Saulnier) said, ‘ now, just sign that/ I told him it was no use signing until the charter was made ; ‘ well/ he says, ‘ this is only a memorandum to make a charter; if you come up Monday morning 111 have that charter all drawn according to this memorandum.’ On the Monday following, a formal charter was prepared by Saulnier and offered to the defendant to sign, which he refused in consequence of a variance between the terms of it and such memorandum.” This statement of the occurrences at such interview was contradicted by Saulnier and. Jewett in their testimony, which made such memorandum an agreement signed by the defendant in order to make it binding.
The learned judge, before whom the action was tried, charged the jury that if such memorandum “ was considered ” by the parties “as an agreement between them, leaving no further agreement to be made, no new agreement to be drawn, no new provision to be incorporated in it, but was signed by them as containing precisely what they did agree to, and the whole of what they agreed to, then it was binding, and the commission was earned. If there was nothing more to do on the following Monday than to get for the better protection of each party, duplicate copies of it, signed by them, so that each one would hold a clean copy, the agreement was concluded,” but if it “ was merely a memorandum, containing the conditions to be embodied in a charter-party, which was to be afterwards drawn up and signed, and it was understood between them that it was not a delivered instrument, and that there was to be no binding agreement between them, until such a paper was drawn up and executed, then it was not concluded, and the commissions could not be earned.” Also, that the plaintiffs would not perfect their commission “ because the Mexican government refused to go on with the contract they had executed,” or because it or its “ agent insisted on having further *169 clauses in it, to which the defendant would not consent.” No fault can be found with the law of this charge, which is clearly and admirably stated, and the conflicting evidence warranted the submission of the questions of fact embraced in it to the jury. They have passed upon them and there is no reason to disturb their verdict upon the ground of weight of evidence.
This disposition of the case was sufficient to meet any claim of customary commissions, upon the ground of the completion of the agreement, and it equally disposes of any prior agreement by the defendants, if made, to pay five per cent commissions to the plaintiff, if the charter should be completed, by leaving the question of the completion of the bargain to the jury.
The making of such agreement was submitted to the jury on conflicting testimony. The court did not charge the jury that, if that agreement was not made, although the agreement for the charter was, the plaintiffs were not entitled to the customary commissions; but merely that if the defendant, as he testified, told Saulnier in the presence of Jewett, that he did not want to pay any commissions, but would take him to Mexico without expense, the plaintiffs were entitled to no commissions, customary or otherwise.
The judgment must be affirmed, with costs, and the order denying a new trial also.